UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HARRY L. THOMAS, JR.,<br><br>Defendant. | Criminal Action No.  12-00003 (JDB) |

**MEMORANDUM OPINION AND RESTITUTION ORDER**

On May 3, 2012, this Court sentenced the defendant, Harry L. Thomas, Jr., to concurrent terms of thirty-eight months of incarceration for one count of theft concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A), and thirty-six months of incarceration for one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1).  Order of Judgment, ECF No. 24.  At the sentencing hearing, the Court heard brief argument from both parties as to the proper amount of restitution.  In order to allow the parties an opportunity to provide supplemental briefing on the issue, the Court deferred the determination of restitution pursuant to 18 U.S.C. § 3664(d)(5).  Now, after full consideration of the parties' arguments at the sentencing hearing, their supplemental memoranda, and the entire record herein, and for the reasons set forth below, the Court will order restitution in the amount of $353,500.

**I.     Background**

On January 6, 2012, Thomas pled guilty to one count of theft of federal funds, in violation of 18 U.S.C. § 666(a)(1)(A) and one count of filing a false tax return, in violation of 26

1

U.S.C. § 7206(1). Those offenses were related to Thomas' misappropriation of federal funds from approximately April 2007 to February 2009. These funds were primarily intended for youth-based programs in the District of Columbia, but were misdirected by Thomas for other uses, including for his own personal benefit, while he was serving as a D.C. City Council member representing Ward 5.

After Thomas' guilty plea, the United States Probation Office issued a Presentence Investigation Report ("PSR") which calculated a loss amount of $446,000. PSR ¶ 158. The District of Columbia also provided a victim impact statement claiming a total loss of $446,000. PSR ¶¶ 79-80. Accordingly, the PSR recommended restitution for the same amount of $446,000. PSR ¶ 181. Thomas objected to the PSR's calculation.

At sentencing on May 3, 2012, this Court concluded that $446,000 was the proper loss amount for calculating the applicable offense level and, hence, the relevant Sentencing Guidelines range, even though only $353,500 of that $446,000 apparently went to Thomas' own benefit. Tr. 78:16-79:5; 81:4-7. However, the Court deferred its determination of restitution. Thomas concedes that he is liable for restitution; the only issue remaining is what that amount should be. He claims that the proper measure of restitution should be $353.500, minus the $70,000 in payments he has already made to the District of Columbia. Def.'s Supp. Mem. at 3. The government's position is more equivocal. While it agrees that the parties had stipulated in the Plea Agreement to a restitution amount of $353,500, the government now states that an order of restitution for $446,000 would be "consistent" with the Mandatory Victims Restitution Act ("MVRA") and supporting caselaw given the Court's determination that the loss amount for determining the offense level under the Guidelines was $446,000. See Gov't Supp. Mem. at 3-4.

**II.     Analysis**

Mandatory restitution for victims of certain crimes -- including the theft count at issue here -- is governed by the MVRA, 18 U.S.C. § 3663A.  The purpose of the MVRA "is to make victims of crime whole" and to "restore these victims to their original state of well-being." See, e.g., United States v. Emor, No. 10-298, 2012 WL 983152, at *22 (D.D.C. Mar. 23, 2012) (citing United States v. Gordon, 393 F.3d 1044, 1048 & 1053 (9th Cir. 2004) (quoting United States v. Simmonds, 235 F.3d 826, 831 (3d Cir. 2000)).

Thomas relies on Hughey v. United States, 494 U.S. 411 (1990).  There, the Supreme Court, construing the Victim and Witness Protection Act ("VWPA"), stated that when a defendant pled guilty to a single count, restitution was limited to the damage caused by that count. See Hughey, 494 U.S. at 420; Def.'s Supp. Mem. at 3-5.  Although the VWPA differs from the MVRA in ways not fully relevant here, the MVRA, consistent with Hughey, "limits recovery to amounts 'directly caused by the conduct composing the offense of conviction,' or 'those amounts expressly agree[d] to' pursuant to a plea agreement." See United States v. Saxton, 53 Fed. App'x 610, 613 (3d Cir. 2002) (citing United States v. Akande, 200 F.3d 136, 139 n.3 (3d Cir. 1999).

Under certain circumstances, restitution can extend beyond the offense of conviction if a "scheme, conspiracy, or pattern of criminal activity" is an element of the offense, or if a plea agreement allows for a greater amount.  See United States v. Fogg, 409 F.3d 1022, 1028 (8th Cir. 2005); United States v. Napier, 463 F.3d 1040, 1046 (9th Cir. 2006); see also Emor, 2012 WL 983152, at *22-23 (citing instances where restitution orders were based on total losses caused by a scheme as opposed to the charged and convicted offense).  In contrast, according to Thomas,

an offense under 18 U.S.C. § 666(a)(1)(A) does not contain such an element. Based on the plain language of section 666(a)(1)(A) and absent clear caselaw indicating otherwise, the Court agrees.

An offense in violation of 18 U.S.C. § 666(a)(1)(A) is committed when "an agent of an organization, or of a State, local, or Indian tribal government" . . . "embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner" property that has a value of at least $5,000 and "is owned by, or is under the care, custody, or control of such organization, government, or agency," provided that "the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a federal program." See 18 U.S.C. § 666(a)(1)(A) & (b). Under the statute's plain language, a "scheme, conspiracy, or pattern of criminal activity" is not an element of the offense. See Napier, 463 F. 3d at 1046 (observing that section 666(a)(1)(A) offense "contains no such element"); see also United States v. Maturin, 488 F.3d 657, 662 (5th Cir. 2007) (reading plain language of statute that prohibited concealment of assets from creditors in bankruptcy proceedings to conclude that a "scheme, conspiracy, or pattern of criminal activity" was not an element of the offense). The Information in this case, which is devoid of any reference to a "scheme, conspiracy, or pattern of criminal activity," reinforces this interpretation. That charging instrument states that Thomas, in violation of section 666(a)(1)(A), "embezzled, stole, obtained by fraud, without authority knowingly converted to the use of a person not the rightful owner, and intentionally misapplied property worth at least $5,000 and owned by . . . and under the control of the District of Columbia, that is, $353,500 in District of Columbia funds."

Information ¶ 3.[1]

Neither party has pointed to, nor has the Court identified, any caselaw where courts have construed section 666(a)(1)(A) as containing as an element a "scheme, conspiracy, or pattern of criminal activity." Indeed, the cases that discuss the elements of such an offense lead to the opposite conclusion. For example, in Napier, the defendant was indicted for three counts of violating section 666(a)(1)(A). 463 F.3d at 1042. The Ninth Circuit observed that "[r]estitution may go beyond the offense of conviction under certain conditions if the offense of conviction contains an element of a scheme, conspiracy or pattern of criminal activity," but "the offense of which Napier was convicted contains no such element." Id. at 1046. Similarly, in United States v. Mees, the victim suffered a total loss of $1,418,936 as a result of the defendant's "scheme" but the defendant had pled guilty to just one count of "theft concerning federal funds in the amount of $19,650" in violation of section 666(a)(1)(A). 640 F.3d 849, 852 (8th Cir. 2011). The Eighth Circuit commented that the district court, despite applying an upward departure under the Guidelines based on the extent of the defendant's criminal activities, "acknowledged that it was limited to seeking restitution for the one count that Mees had pleaded guilty to, [theft of] $19,650," rather than the $1,418,936 in losses he had caused. Id. at 853. Indeed, the district court had "expressed its frustration about its inability to order restitution for an amount closer to the total loss of $1,418,936." Id.

---

[1] Thomas has argued that, in the event the statutory language of section 666(a)(1)(A) could be read ambiguously as including a "scheme, conspiracy, or pattern of criminal activity" as an element of the offense, the rule of lenity cautions against such a construction. Def.'s Supp. Mem. at 11-12. Because the Court does not go beyond the plain language of the statute, it will not address this argument. Similarly, although the word "scheme" was occasionally used at the sentencing hearing to describe Thomas' conduct, it is the language of section 666(a)(1)(A), then stated in the Information and the Plea Agreement, that is the Court's focus.

Nor does the Plea Agreement reflect that the parties intended to expand the scope of restitution beyond the offense of which Thomas was convicted, namely the theft of $353,500, [2] although the Court noted at the defendant's sentencing that when read literally, the agreement is somewhat confusing on that issue. See Plea Agreement at 5 (stating that "[i]n addition to any restitution that may be ordered by the Court," Thomas "agrees to be jointly and severally liable . . . to make restitution, in the amount of $353,500"); Tr. 24:5-25:6. But based on the representations made by the parties at the sentencing hearing and in their memoranda, there is no dispute that the parties stipulated to a restitution amount of $353,500. The PSR also reflects this reading of the Plea Agreement. See PSR ¶ 159. In any event, the language in the Plea Agreement differs from a situation where, for example, the parties had agreed that a defendant would make "full restitution" or some other similarly clear expression by the parties that they had intended for restitution to apply to conduct beyond the convicted offenses. See, e.g., Saxton, 53 Fed. App'x at 614.

Because the charged and convicted offense was for the theft of $353,500, and section 666(a)(1)(A) does not contain an element of a "scheme, conspiracy, or pattern of criminal activity," and nothing in the plea agreement reflects that the parties agreed that Thomas would make restitution for amounts beyond the convicted offense, the Court concludes that restitution

---

[2] The defendant pled to, and was convicted of theft of $353,500 in violation of section 666(a)(1)(A). The Court, on consideration of the statement of the offense, the PSR, and the entire record, concluded that the total loss amount -- for the purpose of calculating the offense level under the Guidelines -- was $446,000. As this Court expressed at the hearing, and the parties do not dispute, the analysis for the proper loss amount for Sentencing Guidelines purposes differs from the loss measure with respect to restitution. Indeed, courts have stated that "a loss determination used for Sentencing Guidelines purposes [cannot] be used to determine the amount of restitution, given the different methods of calculation and different purposes of calculation." See United States v. Zangari, --- F.3d ----, 2012 WL 1323189, at *9 n. 8 (2d Cir. 2012) (citing United States v. Judy Yeung, 672 F.3d 594, 604 (9th Cir. 2012)). Losses for Sentencing Guidelines calculation can include considerations such as the intended loss, and the defendant's gain, which can exceed the restitution imposed under the MVRA.

in the amount of $353,500 is warranted, with credit given for any amounts already paid by Thomas.[3] Accordingly, it is hereby **ORDERED** that, in addition to the terms and conditions set forth at the sentencing hearing and in the May 4, 2012 Order of Judgment and Commitment, restitution in the amount of $353,500, joint and several with James Garvin and Marshall D. Banks, is imposed; it is further

**ORDERED** that restitution shall be immediately payable to the District of Columbia. Within 30 days of any change of address, the defendant shall notify the Clerk of the Court for the U.S. District Court, District of Columbia, of the change until such time as the financial obligation is paid in full; it is further

**ORDERED** that restitution payments shall be made by the defendant through his participation in the Bureau of Prisons' Inmate Financial Responsibility Program; it is further

**ORDERED** that, when released from custody, the defendant shall provide the United States Probation Office with his income tax returns, authorization for release of credit information, and information about any business or finances in which he has control or interest until all restitution is satisfied; it is further

**ORDERED** that the defendant shall pay the balance of any restitution owed at a rate of no less than $200 each month, and provide verification of payments to the United States Probation Office; it is further

**ORDERED** that all other terms and conditions previously set forth at the sentencing hearing shall remain the same; and it is further

---

[3] Based on the record, it appears that Thomas has already contributed $70,000 toward his restitution obligation. Accordingly, Thomas will receive credit for the amount paid, leaving $283,500 as the amount of restitution still owed.

**ORDERED** that an Amended Order of Judgment and Commitment be entered in this case, reflecting restitution in the amount of $353,500.

**SO ORDERED**.

>              /s/
> JOHN D. BATES
> UNITED STATES DISTRICT JUDGE

Date:  May 31, 2012